# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Kenneth Roy King, Sr. and Jacqueline Marie King<br><br>Debtors. | BKY Case No. 12-42842<br>Chapter 7 |
| Christensen Law Office, PLLC as assignee for Darlla E. Gravdal,<br><br>Plaintiff,<br><br>v.<br><br>Kenneth Roy King, Sr.,<br><br>Defendant. | ADV Case No._____<br><br><br><br>**COMPLAINT** |

## I. INTRODUCTION

1. Debtor Kenneth King's bankruptcy is merely an attempt to escape liability for fraud. King, along with his allies, deceived Darlla Gravdal by selling her home without her knowledge and stripping it of its equity. King set up the sale so that he could take advantage of a vulnerable adult and make an illegal profit off her home. Once King's transaction was complete, Gravdal was then forced to pay rent and subsequently told she had to leave the home. King's debts to Gravdal are nondischargeable under the bankruptcy code.

## II. PARTIES

2. Darlla E. Gravdal ("Gravdal"), is a Minnesota resident residing at 4328 Irving Avenue North, Minneapolis, Minnesota 55412, Hennepin County.

3. Assignee Christensen Law Office, PLLC, is a law firm located at 800 Washington Ave. N, Ste. 704, Minneapolis, MN 55401.

4. Gravdal's home, at 4328 Irving Avenue North, Minneapolis, Minnesota 55412 ("Home" or "Property"), is the subject of claims brought by Plaintiff. The Property is legally described as: Lot 14, Block 1, Harvey's Addition to the City of Minneapolis.

5. Defendant Kenneth King (hereinafter "King") is a Minnesota resident at 6713 Colfax Avenue North, Brooklyn Center, Minnesota 55430, Hennepin County.

## III. JURISDICTION

6. This is a core proceeding as that term is defined by 28 U.S.C. § 157(b)(2) in that it concerns claims and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

7. This Court has jurisdiction under 11 U.S.C. § 523 and 18 U.S.C. 1334. This adversary proceeding relates to this case under Chapter 7 of the Bankruptcy Code, now pending in this Court.

8. This is an adversary proceeding pursuant to 11 U.S.C. § 101 et seq. and 11 U.S.C § 523(a).

9. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

## IV. FACTS

**A. Gravdal, a vulnerable adult, pays rent to her grandmother in exchange for the deed to her home.**

10. Gravdal has lived at the Home for 20 years and is a single mother with six children.

11. Gravdal is a vulnerable adult as defined in Minn. Stat. § 609.232, subd. 11(4), suffering from a severe learning disability.

12. In or about October 1988, Gravdal's grandmother, Evelyn Knight ("Knight"), purchased a home at 4328 Irving Avenue North in North Minneapolis, and later sold it to Gravdal on a contract for deed. The contract for deed is for the purchase price of $37,000, beginning on December 1, 1988, payable in monthly payments of $325.00, and having a maturity date of November 15, 1998.

13. Gravdal paid these monthly installment payments to her grandmother and, subsequently, her grandmother's estate.

**B. World Wide Funding induces Gravdal to forge her grandmother's signature.**

14. In or about the spring of 2006, Gravdal was at risk of losing her children to child protection services because her home was in serious disrepair. She was referred to King, Andrei Leon Gill ("Gill"), and their company World Wide Funding & Investments, Inc. ("World Wide Funding") to secure funding to repair the Home.

15. In or about 2006, Gravdal first met with King. He induced Gravdal to sign her grandmother's name to a quitclaim deed to obtain a loan. (*See* quitclaim deed, a true and correct copy of which is attached as Exhibit A.)

3

16. The quitclaim deed is dated December 15, 2003. Gravdal's grandmother died in 2004.

17. The quitclaim deed exhibits an attestation from notary Carolletha Louise Hall that the instrument was acknowledged and signed before her on December 15, 2003 by Knight.

18. Carolletha Louise Hall's notary commission began on May 20, 2005, after the death of Gravdal's grandmother.

19. The quitclaim deed states that it was drafted by Gravdal, but bears two instances of Gravdal's name misspelled as "Darla."

20. Gravdal spells her first name with two "l"s as follows: D-A-R-L-L-A.

   **C. World Wide Funding secretly obtains a mortgage and sells Gravdal's home.**

21. On or about March 8, 2006, World Wide Funding obtained from Gravdal, without her knowledge and consent, a $5,604 mortgage on Gravdal's home. (A true and correct copy of the March 8, 2006 Mortgage is attached hereto as Exhibit B.) In exchange for the mortgage, Gravdal received a check for $5,604.

22. The 2006 Mortgage is notarized by Jacqueline Marie Adams King. Jacqueline Marie Adams King and Defendant Kenneth King have the same address. Upon information and belief, they are married.

23. On or about May 19, 2006, according to title records, Gravdal purportedly sold her home to Gill. (A true and correct copy of the May 19, 2006 Warranty Deed is attached hereto as Exhibit C.)

4

24. Gravdal recalls being taken to a place "far away" in or about May 2006 by King and Gill to sign documentation that King and Gill represented was related to a home equity loan. At no time did Gravdal agree to sell her home, nor did she know that she was doing so.

25. No purchase agreement exists for the sale to Gill.

26. The warranty deed signed on or about May 19, 2006, deeding the Property to Gill, purports to be signed by "Darla" Gravdal. (*See* Id.) Because of the misspelling, the warranty deed exhibits a signature that is an obvious forgery.

**D. World Wide Funding fraudulently distributes the sale proceeds and induces Gravdal to sign over her check to Gill.**

27. The HUD-1 settlement statement and Certificate of Real Estate Value connected with the sale indicate that the Home sold for $110,000. (True and correct copies of the HUD-1 and Certificate of Real Estate Value are attached hereto as Exhibit D.)

28. Gill purportedly financed the transaction with a mortgage loan from Greenpoint Mortgage Funding, Inc. in the amount of $70,000. (*See* May 19, 2006 Mortgage.)

29. The HUD-1 settlement statement and Certificate of Real Estate Value indicate that after taxes and closing costs the remaining $41,480.08 was paid in cash from Gill to Gravdal.

30. The settlement statement indicates that purchase money satisfied a mortgage loan in favor of World Wide Funding in the amount of $8,604. (*See* Exhibit D.)

31. Upon information and belief, this $8,604 payment on May 19, 2006 was to satisfy the $5,604 loan to Gravdal from March 20, 2006.

32. Construing the March 20, 2006 mortgage loan with the May 19, 2006 payment, the loan amount had appreciated approximately $3,000 in 60 days, which is equivalent to 321.20% annually.

33. Gravdal left the closing with a check for $98,497.61. Soon after the closing, Gill instructed Gravdal to sign the check over to him, which, upon information and belief, Gill deposited in the account of World Wide Funding.

34. After May 19, 2006, and before June 29, 2007, Gill only made two payments for repairs to the house. The first repair was in the amount of $3,800 to have the roof re-shingled. The second repair was approximately $15,000 to repair the kitchen, bathroom, and two bedrooms.

35. Gravdal did not receive any other money from Gill, King, or any business entity owned by them.

### E. Gill refinances the Property and demands Gravdal pay him rent.

36. On or about June 29, 2007, Gill refinanced the Property for $99,100 with Lime Financial Services, Ltd. Gravdal did not know of this refinance and received no benefit from this loan. Upon information and belief this money was deposited into a World Wide Funding account.

37. On or about March 12, 2008, Gill delivered a letter to Gravdal demanding that she had to pay Gill $822 in monthly rent or face eviction. (A true and correct copy of the March 12, 2008 Letter from Gill is attached hereto as Exhibit E.)

38. Gill's representations related to the $822 monthly rent payments contradicted earlier representations that Gravdal would pay $440 a month in rent.

39. On or about May 28, 2008, the housing inspector posted a notice on Gravdal's door stating that she had to move out by July 1, 2008, because the property was an unlicensed rental property.

**F. Gill defaults on the mortgage and Gravdal's Home is foreclosed upon.**

40. On or about May 15, 2009, Mortgage Electronic Registration Systems foreclosed on Gravdal's home by Sherriff's sale.

41. At the May 15, 2009, Sherriff's sale, the home was sold to Mortgage Electronic Registration System, Inc. ("MERS") for $26,910.

**G. Gill quitclaims his interest in the Home to Terrance Averyheart and Averyheart attempts to evict Gravdal.**

42. On or about July 21, 2009, Gill conveyed his interest in the Property to Terrance Averyheart ("Averyheart") by quitclaim deed.

43. Averyheart was a co-conspirator in this equity-stripping scheme along with King and Gill.

44. The quitclaim deed indicates that Averyheart's address is 1305 50th Avenue North, Minneapolis, Minnesota.

45. 1305 50th Avenue North, Minneapolis, Minnesota is listed in the Hennepin County Tax rolls as the residence for Gill. Upon information and belief the reason for Averyheart using Gill's address is because they were all affiliates and shared equally in profits and assets.

7

46. On or about July 29, 2009, Mortgage Electronic Registration Systems assigned the Sheriff's Certificate to Vanderbilt Mortgage and Finance, Inc.

47. On or about July 28, 2009, Averyheart sent Gravdal a letter demanding that Gravdal move out in 30 days because Averyheart was now the owner of the property. Averyheart did not have the authority to evict Gravdal because he was not legal title owner to the property.

48. On or about August 11, 2009, Averyheart sent another letter demanding that Gravdal move out of the home. Upon information and belief Averyheart wanted to evict Gravdal to sell or rent the home in order to obtain more illegal profits.

49. On or about September 19, 2009, a couple came to the home and told Gravdal's son that Averyheart represented to them that they could purchase the home from him for $30,000.

**H. The state district court awards Gravdal damages against King, Gill, and Averyheart.**

50. On or about September 25, 2009, Gravdal filed a lawsuit against 11 Defendants, including King, in Hennepin County, Fourth Judicial District; Case No. 27-CV-09-24140.

51. On or about June 13, 2011, the state court ordered that title to the Home be returned to Gravdal .

52. Additionally it entered judgment against King, Gill, and Averyheart jointly and severally for actual damages of $79,697.61 and statutory damages of $21,387.95. The state court found King, Gill, Averyheart, and World Wide Funding jointly and

8

severally liable to Gravdal for fraud, intentional misrepresentation, negligent misrepresentation, conversion, unjust enrichment, civil theft, civil conspiracy to commit fraud, and piercing the corporate veil/individual liability.

53. King is jointly and severally liable to Gravdal for $101,085.56 in damages.

54. On or about January 6, 2012, Alternative Decision Makers, Inc., as conservator for Darlla E. Gravdal, assigned $21,387.95 of Gravdal's state court judgment against King to Christensen Law Office, PLLC.

55. Alternative Decision Makers, Inc., as conservator for Darlla E. Gravdal, assigned $79,697.61 of Gravdal's state court judgment against King to Vanderbilt Mortgage & Finance, Inc.

## V. LEGAL CLAIMS

### COUNT I
### Nondischargeability of Debt Due To Fraud
### 11 U.S.C. § 523(a)(2)(A)

56. Gravdal incorporates the above paragraphs by reference.

57. King made the following representations:

   a. that he would help Gravdal to obtain a home equity loan, acting as her mortgage broker;

   b. that in order for Gravdal to obtain the home equity loan, she would need to sign her grandmother's name to a quitclaim deed;

   c. that Gravdal would begin paying $440 in monthly payments after two years to payback the home equity loan; and

9

    d. that the terms of the transaction in executing the warranty deed, the purchase money mortgage, and all other documents incident to and touching upon the Property were different than the true terms.

58. These representations are false. Specifically, these representations are false because:

    a. King did not obtain for Gravdahl a home equity loan;

    b. Gravdal did not need to quitclaim her Property in order to obtain a home equity loan;

    c. King told Gravdal that she needed to pay $822, directly contradicting the previous statement of $440; and

    d. King did not represent the true terms of the transaction in executing the warranty deed, the purchase money mortgage, and all other documents incident to and touching upon the Property.

59. At the time King made these representations, King knew they were false.

60. King deliberately intended to deceive Gravdal at the time he made these representations and took action.

61. Gravdal, as a vulnerable adult, justifiably relied upon these representations. Had Gravdal known the truth of these representations, Gravdal would not have entered into the transaction where she lost her Home and received no proceeds in exchange.

62. King's actions proximately caused Gravdal damage. Specifically, these representations resulted in:

    a. loss of title to Gravdal's Home;

    b. loss of the proceeds from the sale of Gravdal's Home;

    c. loss of equity in Gravdal's Home; and

    d. legal fees regarding this action and the related state court action.

63. King's actions are of the type set forth in 11 U.S.C. § 523(a)(2)(A) and King's liability to Gravdal is nondischargeable under this provision of the Bankruptcy Code.

## COUNT II
### Nondischargeability of Debt Due To Willful and Malicious Injury
### 11 U.S.C. § 523(a)(6)

64. Gravdal incorporates the above paragraphs by reference.

65. King willfully and maliciously converted Gravdal's Property by taking title to Gravdal's Home under false pretenses. Specifically, King:

    a. Unlawfully stripped Gravdal of title to her Home;

    b. Failed to compensate Gravdal for the sale of her Home; and

    c. Successfully stripped all equity out of Gravdal's Home.

66. King willfully and maliciously stole money and property from Gravdal as provided in Minn. Stat. § 604.14 by taking title to Gravdal's Home under false pretenses. Specifically, King:

    a. Unlawfully stripped Gravdal of title to her Home;

    b. Failed to compensate Gravdal for the sale of her Home; and

    c. Successfully stripped all equity out of Gravdal's Home.

67. By taking an illegal interest in Gravdal's Home, King made false statements concerning real property owned by Gravdal and maliciously published these false statements, therefore slandering title to Gravdal's Home.

68. King's mortgage on the Property violates Minn. Stat. § 58.13(a)(1),(2), and (6) by failing to maintain a trust account to hold trust funds received, commingling trust funds, using trust funds for a purpose other than the purpose they were accepted, and charging a fee for products or services not offered.

69. By the actions complained of herein King committed consumer fraud and violated Minn. Stat. § 325F.69.

70. By the actions complained of herein King used deceptive trade practices and violated Minn. Stat. § 325D.44.

71. By the actions complained of herein King financially exploited a vulnerable adult as defined in Minn. Stat. § 626.5572 subd. 9(b) and violated Minn. Stat. § 626.557 subd. 20.

72. King's actions are of the type set forth in 11 U.S.C. § 523(a)(6) and Gravdal's claim against King is nondischargeable under this provision of the Bankruptcy Code.

## COUNT III
## Non Dischargeability of Judgment Against Debtor-Owned Entities

73. Gravdal incorporates the above paragraphs by reference.

74. Hennepin County District Court, State of Minnesota entered judgment against World Wide Funding as follows:

12

      a. Actual damages of $79,697.61 resulting from Gravdal's claims of fraud, intentional misrepresentation, negligent misrepresentation, conversion, unjust enrichment, civil theft, civil conspiracy to commit fraud, and piercing the corporate veil/individual liability against World Wide Funding, Inc.

      b. Statutory Damages plus costs, disbursements, and fees of $21,387.95 pursuant to Minn. Stat. § 626.557 against World Wide Funding, Inc.

75. As an owner of World Wide Funding, Inc., King made the corporation a mere alter ego of his own actions. Specifically, King failed to maintain the requisite formalities of the closely held corporation mandated by Minnesota law. King used this entity to perpetuate a fraud on Gravdal.

76. To the extent that any acts complained of herein are attributed to World Wide Funding, the liability of King for such acts is not limited.

77. As a result of the above, King is personally liable for the judgments entered against World Wide Funding to Gravdal and such indebtedness is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court to award judgment as follows:

1. For nondischargeable damages incurred by Plaintiff due to Debtor's fraud pursuant to 11 U.S.C. § 523(a)(2)(A) including actual damages and allowable attorney fees.

2. For nondischargeable damages incurred by Plaintiff due to Debtor's willful and malicious conduct pursuant to 11 U.S.C. § 523(a)(6) including actual damages and allowable attorney fees.

3. That Debtor is personally liable for the judgments entered against World Wide Funding, Inc. in the state court matter referenced herein and such indebtedness is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).

4. Any such further relief deemed appropriate by this Court.

                              **CHRISTENSEN LAW OFFICE PLLC**

Dated: August 2, 2012         By:   /s/ Daniel M. Eaton
                                          Daniel M. Eaton (#389452)
                                          Carl E. Christensen (#350412)
                                          Attorneys for Plaintiff
                                          800 Washington Ave. N.
                                          Ste. 704
                                          Minneapolis MN 55401
                                          Ph: (612) 823-4016
                                          Fax: (612) 823-4777
                                          dan@clawoffice.com
                                          carl@clawoffice.com